GARRISON, Judge.
This is an appeal from a judgment of the district court dated October 10, 1984 denying an exception of no right of action, granting an exception of no cause of action and dismissing plaintiffs’ action for a declaratory judgment. From that judgment, plaintiffs Drs. Rudolph J. Bourgeois and Armand A. Jacques appeal.[1]
On December 1, 1976, Drs. Rudolph J. Bourgeois, Armand A. Jacques, Raymond A. Schwarz, Felix G. Rabito, Frank J. Rabi-to, Anthony F. Rabito, and Frank P. In-caprera by an authentic act before a notary and two witnesses entered into a partnership (termed “Joint Adventure”) to do business as the Medical Center of New Orleans East. (See Exhibit A attached).
The partnership agreement provided for a first right of refusal:
“No partner of this Joint Adventure shall ever sell, assign or transfer his interest in the said Joint Adventure until the same has been first offered to the said Joint Adventure; said offer must be presented in writing bearing the signature of the would-be purchaser disclosing the purchase price and all of the terms and conditions of purchase, and said Joint Adventure shall have 60 days from receipt of same in which to buy the selling partner’s interest under the same terms and conditions and for the same consideration presented in the offer to sell — purchase. Upon refusal of the Joint Adventure to act within 60 days from receipt of the offer to sell — purchase, said partner shall have the right to confect the sale of his interest to any third party, under the terms and conditions submitted for the sale of his interest.”
It also provided that although various partners had differing percentages of interest ranging from 10% through 20%, partners did not vote their percentage of interest, but rather only had one vote per man:
“Notwithstanding the difference of the percentage ownership of the partners, for purposes of management and the decision making process, each partner shall have one vote. Additionally, the Partnership shall officially meet at least annually on its anniversary date.”
Although the partnership agreement provides that each man votes equally one vote, as opposed to x percent, the agreement does not state or specify the margin required for victory, namely, simple majority, two-thirds, three-fourths, or unanimous.
Within the authentic act creating the partnership is also contained an employment provision:
“The said Frank J. Rabito is hereby granted full power and authority to represent the Joint Adventure and to sign for same in all respects including but not limited to the right to draw and endorse checks, drafts, bills of exchange, draft receipts, warehouse receipts, bills of lading and other negotiable and nonnegotiable instruments,- leases, mortgages, and *797 contracts, and shall be designated as the Executive Administrator of the said Joint Adventure.
In the event that the employment of the said Frank J. Rabito as Executive Administrator for this Joint Adventure be terminated or in any way changed or modified as to the terms and conditions of his employment including compensation paid for services rendered, then in that event, the said Frank J. Rabito shall have the right at his option to require that the Partnership purchase his interest upon demand in writing under the terms and conditions as hereinafter stated.”
On May 24, 1985, Frank J. Rabito sent a letter to his other partners informing them of his desire to sell his partnership interest to “Pendleton Memorial Methodist Hospital and/or Hospital Properties, Inc.”[2] The letter additionally called a meeting for June 6, 1984 at Rabito’s office. Attached to the letter was a copy of Pendleton’s letter containing its offer to Rabito, signed by Lee Lawrence, President of Pendleton.
The Pendleton offer provided as follows: “Dear Mr. Rabito:
Pursuant to a series of meetings that have been held relative to the purchase of your interest in the Joint Adventure of the Medical Center of East New Orleans doing business as the Medical Center of East New Orleans, this letter shall constitute an offer on behalf of Pendleton Memorial Methodist Hospital and/or Hospital Properties, Inc. to purchase your entire undivided interest (reported by you to be an undivided 15V2%) in all of the assets of the Medical Center of East New Orleans, including but not limited to real estate, equipment and ancillary services, as well as the managing partnership rights of the Medical Center of East New Orleans and its related services for $2,000,000 payable on the following basis and conditions:
1. $200,000.00 cash and a note for $1,800,000.
2. The note to be payable on an amortization schedule of thirty years payout at 12% interest per annum, (payable quarterly with a 15 day grace period), and a fifteen year balloon payment on the unpaid balance. A 2% penalty shall be applied on any installment that is delinquent beyond the grace period.
3. The note shall have a provision whereby any part or all of the principal can be prepaid without penalty.
4. The note shall be secured by a vendor’s lien and/or pledge on the assets sold by Mr. Frank Rabito and further secured by a second mortgage on the recently acquired hospital land fronting Lake Forest Boulevard, or substitute collateral on a second mortgage providing that the substituted collateral is of equal value to the Lake Forest property referenced in this Item 4.
5. Approval of the sale to Pendleton Memorial Methodist Hospital and/or Hospital Properties, Inc. of the Frank Rabito Interest in the partnership as well as approval of the assignment of management rights to Methodist Hospital for a period of at least 3 years by the partners of the Joint Adventure of the Medical Center of East New Orleans as per their partnership agreement.
6. Mr. Frank Rabito’s agreement not to compete as a partner, investor, manager or operator of this or any competitive building, medical service, laboratory, either directly or indirectly for a period of 5 years and within a radius of 30 miles from Pendleton Memorial Methodist Hospital with exception of areas west and/or south of Canal Boulevard, Canal Street and the Mississippi River.
*798 7. It is also agreed to by Mr. Frank Rabito that as of the date of this offer that there shall be no changes insofar as additional debt or purchases or sales of major equipment, etc. relative to the assets and rights being acquired. This sale shall be made with all full warranties and shall be passed in accordance with the provisions of the Louisiana Bulk Sales Act.
8. This offer shall remain in effect for 75 days from the date of execution indicated above.
9. Each party to this contract shall have the right of specific performance.
10. Upon acceptance of this agreement by Frank J. Rabito, Pendleton Memorial Methodist Hospital and/or Hospital Properties, Inc. agrees to immediately place $100,000 in escrow as an earnest money deposit which will be applied toward the $200,000 deposit once the purchase transaction is consummated. Any interest accrued on the deposit shall accrue to the benefit of purchaser.
11. It is understood that an Act of Sale will be consummated by December 31, 1984. In the event that Pendle-ton Memorial Methodist Hospital and/or Hospital Properties, Inc. chooses to execute an Act of Sale earlier than December 31, 1984, it is understood that Pendleton Memorial Methodist Hospital and/or Hospital Properties, Inc. shall assume any balance outstanding on the existing note between Frank J. Rabito and the partnership. In such instance, Pendleton Memorial Methodist Hospital and/or Hospital Properties, Inc. agrees to lend to the Medical Center of East New Orleans this balance so that Mr. Frank J. Rabi-to can be renumerated for any balance outstanding on this note between the partnership and himself. It is understood that as of this date the current balance on this note is $250,000, and it is further understood that Mr. Rabito will be reducing the balance of that note with a • payout by December, 1984.”
Exhibit B
On June 21, 1984, Rabito sent a letter to his other partners, scheduling a meeting for June 28, 1984 unilaterally setting an agenda as follows:
"... Subsequent to these discussions formal vote of the partnership will be taken on the following matters:
1) Whether or not the partnership wishes to purchase my interest on the same terms and conditions as stated in the Offer of Purchase pursuant to the partnership agreement.
2) Whether or not the partnership wishes to waive the balance of the 60-day period for making the above mentioned decision in light of market developments.
3) Whether the partnership wishes to affirmatively vote in favor of Pendle-ton Memorial Methodist Hospital and/or Hospital Properties, Inc. becoming the managing partner.”
Exhibit C
At the meeting, a disagreement developed, centered on the issue of what margin of victory was required in the voting process. Plaintiffs argue that a unanimous vote is required. Defendants argued that a simple majority was required.
Additional disagreements developed on the questions of whether the 60 day period is capable of waiver, whether Rabito is capable of selling his employment, and whether the partnership is forced to accept Pendleton as a partner as a result of the proposed sale. Thus the meeting concluded.
In response thereto, plaintiffs filed this action for declaratory judgment as follows:
“Plaintiffs aver and request that this Court, in accordance with the law and jurisprudence of the State of Louisiana, interpret the Partnership Agreement as follows:
(1) That it requires unanimous consent to allow a partner to withdraw from the Partnership since the Partnership Agreement is constituted for a term;
*799 (2) That the contemplated sale by defendant, FRANK J. RABITO, to the Pendleton Memorial Methodist Hospital effects a withdrawal by him and necesitates [sic] unaimous [sic] consent of the partners, ab initio;
(3) That if all partners do not unanimously consent to permit the withdrawal, the selling partner cannot sell to a third party whether or not the partnership acts within sixty (60) days;
(4) If unanimity does not exist, the partner, here FRANK J. RABITO, defendant herein, cannot withdraw and sell his interest;
(5) That unanimous consent is required to admit Pendleton Memorial Methodist Hospital and/or Hospital Properties, Inc., as a partner, and to assume the management rights of FRANK J. RABITO;
(6) That the offer is defective when it refers to the sale of FRANK J. RABI-TO’s ‘undivided interest’ in the assets of the partnership to be sold, because, under the law and jurisprudence of this State, a partner has no present interest in any individual assets of the partnership and the sale by one partner of his interest in an unliquidated partnership is neither a sale of a specific property nor of an interest in a specific property; the offer is further defective because it states that the note for the purchase of FRANK J. RABITO’s interest is to be secured ‘by a vendor’s lien and/or pledge on the assets being sold by FRANK RABI-TO_,” since a partnership interest is not an interest in any specific property, a mortgage “or pledge” cannot be granted on those assets owned by the partnership; and the sale of an interest in a partnership cannot give rise to a vendor’s lien on those assets, if owned by the partnership;
(7) The partnership cannot meet the clause of the offer that provides as further security for the sale of FRANK J. RABITO’s interest a mortgage on Pendleton property (an impossible condition); and
(8)That any and all amendments to the Partnership Agreement require unanimous consent.”
The trial court judge granted an exception of no cause of action and the judgment previously discussed ensued.
On appeal, plaintiffs raise the following specifications of error:
“(1) Does the sale of a partnership interest encompass a substitution of partners under Louisiana law?
(2) Do the provisions of the partnership agreement in this case negate the rule of Civil Code Article 2807 that unanimous consent is required to permit a partner to withdraw without cause prior to expiration of the term, to admit a new partner, or to amend the partnership agreement?
(3) May the partners waive by majority vote the 60-day period in the partnership agreement within which to buy a selling partner’s interest?
(4) Is the Pendleton-Rabito offer defective and does it contain impossible conditions?
(5) Does plaintiffs’ petition state a cause of action?
(6) Should plaintiffs have been given an opportunity to amend their petition?”
In Darville v. Texaco, Inc., 447 So.2d 473 (La., 1984), the Louisiana Supreme Court briefly summarized the general rules dealing with exceptions of no cause of action:
“The purpose of an exception of no cause of action is to determine the sufficiency in law of the petition. The exception is triable on the face of the papers and for the purposes of determining the issues raised by the exception, the well pleaded facts in the petition must be accepted as true. La.C.C.Pro. art. 927; Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984); Haskins v. Clary, 346 So.2d 193 (La.1977). The general rule applicable to a trial of such exception is that an exception of no cause of action must be overruled unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based; *800 that is, unless the plaintiff has no cause of action under any evidence admissible under the pleadings. Haskins, supra, at 195; West v. Ray, 210 La. 25, 26 So.2d 221 (1946).” (At 474-475).
In the instant ease, Rabito seeks to sell his “interest” in the partnership. His partnership interest is a separate and distinct legal res from the other issues with which his partnership interest is being confused. His partnership interest is “an undivided interest in the whole” (C.C. Art. 2801 “A partnership is a juridical person, distinct from its partners ... ”). His partnership interest is his undivided percentage ownership in the profits and surplus of assets over liability upon liquidation. C.C. Art. 2803 “Each partner participates equally in profits, commercial benefits, and losses of the partnership, unless the partners have agreed otherwise,” and C.C. Art. 2832 “... Finally, any surplus shall be divided among the partners proportionally based on their respective interests in the partnership.” Civil Code Art. 2812 allows him to “share”[3] his interest with a third person.
Separate and distinct from Rabito’s partnership interest is the employment contract contained in the partnership agreement. Rabito seeks to “sell” his employment as managing partner without the consent of all of his partners or employers. While a job may have a clearly ascertainable economic value for past work performed, can one sell an unperformed hence not liquidated future promise to work? What are the relative work habits of the potential seller and purchaser of a job? Is a job a thing which is capable of sale? Our codal scheme consistently holds that “A man cannot sell that which he does not own.” Accordingly it appears that Rabito does not own the “management rights” conferred upon him by the partners. It is not his “right” nor a “right” at all as to him. Accordingly that part of the proposal is “contra bonos mores” and is prohibited.
Civil Code Art. 2807 provides:
“Unless otherwise agreed, unanimity is required to amend the partnership agreement, to admit new partners, to terminate the partnership, or to permit a partner to withdraw without just cause if the partnership has been constituted for a term.
Decisions affecting the management or operation of a partnership must be made by a majority of the partners, but the parties may stipulate otherwise.” (Emphasis added).
Acts 1980, No. 150, Sec. 1, eff. Jan. 1, 1981
Additionally, Civil Code Article 2821 provides:
“If a partnership has been constituted for a term, a partner may withdraw without the consent of his partners pri- or to the expiration of the term provided he has just cause arising out of the failure of another partner to perform an obligation. (Emphasis added).
Acts 1980, No. 150, eff. Jan. 1, 1981.
The instant partnership was constituted for a term. Rabito seeks to not only sell his interest, but also to withdraw from the partnership. Because the partnership is one with a term, he only has two possible methods of withdrawal:
1. With the unanimous consent of his partners where there is no just cause (C.C.A. 2807);
2. Without the consent of his partners where there is just cause “arising out of *801 the failure of another partner to perform an obligation” (C.C.A. 2821).
While the comments under C.C. Art. 2821 are not law and are persuasive only, it is noted:
“(a) The requirement that a partner have just cause to withdraw from a partnership that has been constituted for a term is necessary because in those cases there is a greater likelihood that withdrawal prior to the expiration of the term would damage the partnership and prejudice the interests of the remaining partners. Just cause, however, is limited to causes that arise out of the failure of a partner to perform an obligation and does not cover the broader range of causes such as the hardship of a partner, the nonprofitability of the partnership, or the failure of the partnership to realize its objectives.
(b) A partner who attempts to withdraw without just cause remains liable as a partner and may be liable for resulting damages pursuant to Articles 2809 and 2810, supra.” (Emphasis added).
It is apparent that there has been no “failure of a partner to perform an obligation” in the instant matter. Hence Rabi-to cannot withdraw without the consent of his partners.
The initial conflict developed over the margin of victory required. Defendant argues that “one vote” implies majority. This is incorrect. The partnership act does not specifically state “simple majority,” hence C.C. Art. 2807 is controlling and an unanimous vote of the partners is required for Rabito to withdraw. In addition to selling his undivided partnership interest, and seeking to withdraw, Rabito desires to have the purchaser made a partner. Rabi-to’s status as a partner is not a res capable of sale. Additionally, any attempted sale of his status as a partner is prohibited by law:
“A partner may share his interest in the partnership with a third person without the consent of his partners, but he cannot make him a member of the partnership. He is responsible for damage to the partnership caused by the third person as though he caused it himself.”[4] C.C. art. 2812. (Emphasis added).
In order for the purchaser to become a partner, a unanimous vote in favor of Pen-dleton’s admission as a partner is required under C.C. Art. 2807 “... unanimity is required to ... admit new partners ...”
Defendants argue that the instant case is not an admission of a new partner (presumably meaning an increase in the number of partners) but rather is a substitution of one partner for another (presumably meaning a change in the identity of partners, but not in the number of partners). The word “substitution” is not used in the partnership articles. Civil Code Art. 2829 provides as follows:
“A change in the number or identity of partners does not terminate a partnership unless the number is reduced to one.”
This article deals with the juridical person of the partnership itself, but is not in conflict with C.C. Art. 2807. The phrase “to admit new partners” encompasses both a change in number and identity.” Thus in the instant ease, a unanimous vote of the partners is required for either a change in number or a change in identity or both.
It is apparent that under Darville, above, that the petition is “sufficient in law” to state a cause of action. Accordingly, the trial court erred in granting the exception of no cause of action.
For the reasons discussed, the portion of the judgment denying the exception of no *802 right of action is affirmed. The portion of the judgment granting the exception of no cause of action and dismissing plaintiffs’ ease is hereby reversed and the case is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

. Substituted appellant is Mrs. Clarisse R. Jacques, widow of Armand A. Jacques, who died on January 20, 1985.

. Hospital Properties, Inc. is not identified. The Pendleton letter consistently uses the "and/or" language cited above. Accordingly, it is assumed that Hospital Properties, Inc. is a wholly owned subsidiary of Pendleton and not a separate, different corporation with a different President and different unrelated shareholders.

. It is interesting to note that" this article appears to authorize the device known as the “sub-partnerships” which means that the partner would have a continuing interest in both his current partnership and the subpartnership created.
This code article does not use the more familiar term of "alienation” nor does it mention "assignment," both of which include a severing of control and duties to the former relationship.
C.C. Art. 2802 provides that "The contract of partnership is governed by the provisions in the Title: Of Conventional Obligations, in all matters that are not otherwise provided for by this Title.” This article specifically states the partnership contract, not other business relationships. Thus while no partnership codal article prohibits alienation or hypothecation of a partnership interest, no partnership codal article authorizes it either.

. The Comment states:
"This article reproduces the substance of Article 2871 of the Louisiana Civil Code of 1870. In the absence of an express prohibition in the partnership agreement, a partner may associate a third person in his interest in the partnership, but the association would not make the third person a partner. This approach follows French Civil Code Article 1861; Quebec Civil Code Article 1853; Q.R.P. Article 18; and U.P.A. Sec. 18(g).”