538 So.2d 728 (1989)
Pete HARRIS, Plaintiff-Appellee,
v.
Mavice WALLETTE, et al., Defendants-Appellants.
No. 20178-CA.
Court of Appeal of Louisiana, Second Circuit.
February 1, 1989.
Rehearing Denied February 24, 1989.
*730 Peatross, Greer & Frazier by L. Edwin Greer, Edward Dixon, Shreveport, for plaintiff-appellee, Pete Harris.
Blanchard, Walker, O'Quin & Roberts by James C. McMichael, Jr., Shreveport, Laxalt, Washington, Perito & Dubuc by Judah Lifschitz, Lisa B. Horowitz, Randal W. Wax, Washington, D.C., for defendants-appellants, Mavice Wallette, Alonzo Wallette, Nola Wallette Washington & Gerald Wallette.
Cary & Cary by Curtis W. Cary, Shreveport, for defendant-appellant, Succession of Arthur Chapman.
Irving Greenberg, Shreveport, for defendant-appellant, Succession of Dover Chapman.
Before JASPER E. JONES, SEXTON and LINDSAY, JJ.
SEXTON, Judge.
In this declaratory judgment case the district court recognized Pete Harris as the sole proprietor of a business known as Freeman and Harris Cafe and rendered judgment establishing a formula for distribution of their interest to the successors of the former partners. All parties have either appealed or answered the appeal.
Defendants, Mavice Wallette, Alonzo Wallette, Nola Wallette Washington and Gerald Wallette, contend the trial judge erred in not recognizing them as partners in the business and they attack the formula for distribution established by the trial judge. Plaintiff Harris also attacks the formula for distribution. The successions of Arthur Chapman and Dover Chapman have adopted the position taken by the Wallettes and seek to be recognized as having a continuing partnership interest.
We affirm the judgment of the trial court in part and reverse that judgment in part. In so doing, we recognize that the members of the Wallette family are partners in the business and order an accounting. We further recognize that the Wallette brothers, Alonzo and Gerald, are entitled to the value of an interest they purchased in the partnership from Alice Harris. We also further recognize that the Chapman successions, while not partners in the business, are also entitled to the value of their interest in the assets of the partnership.
The central issue in this appeal is the correctness of the trial judge's finding that the Wallettes were not partners in the Freeman and Harris Cafe. The trial judge based his conclusion that there was no partnership including the Wallettes on a finding that "[t]here was no meeting of the minds...."
Because this is a finding of fact, it may not be disturbed on appeal unless it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). There are three elements of a partnership: (1) mutual consent of the partners, (2) sharing of profits and losses, and (3) each party must have a proprietary interest in the property of the enterprise. Darden v. Cox, 240 La. 310, 123 So.2d 68 (1960). As will be set out hereinafter, the second and third elements of partnership are clearly present in this case. Therefore, our inquiry here is whether the trial judge was clearly wrong in his finding that there was no mutual consent by the parties to form a partnership.
The record shows that the cafe was established in about 1920. Thereafter, it was operated by a series of partnerships. The *731 evidence indicates that on several occasions the heirs of partners were brought into the business as partners.
From 1968 until April 12, 1976, the business was owned by four partners: Pete Harris, 37.5%; Arthur Chapman, 37.5%; Alice Harris, 12.5%; and Wilmer Wallette, 12.5%; Each of the partners, except Alice Harris, worked in the cafe. Alice Harris, who resided in Chicago, Illinois, never worked in the cafe.
On April 12, 1976, Wilmer Wallette died. He was survived by his wife, Mavice, and three children: Alonzo Wallette, Nola Wallette Washington and Gerald Wallette. Wilmer Wallette had been ill for some time before his death, and during this period he had made draws from the business in excess of his part of the earnings. For this reason, at his death, Mr. Wallette's capital account represented less than 1% of the capital of the business.
Under the provisions of LSA-C.C. Art. 2876, which was in effect at the time of Wilmer Wallette's death, his death terminated the partnership. Any continuation of the business as a partnership would require the formation of a new partnership following Mr. Wallette's death.
Following their father's funeral, Alonzo and Gerald Wallette met with Pete Harris and Arthur Chapman at the cafe. The parties' recollections of this meeting differ sharply.
Mr. Harris testified the purpose of the meeting was to find out what Mr. Wallette had done with his interest in the business and to find out if any of the Wallette family members wanted to come to "work with us" in the cafe. According to Pete Harris, none of the Wallettes desired to work in the cafe as they all had better jobs. He advised the Wallette brothers that, "We will do the best we can by your mother." Pete Harris denied any discussion of the Wallettes becoming partners.
Alonzo and Gerald Wallette testified the purpose of the meeting was to discuss the continuation and operation of the business. Both testified they emerged from the meeting with the understanding that Pete Harris would continue to run the business with the Wallette family to "step into the shoes" of Wilmer Wallette and with Mrs. Wallette to enjoy the benefit of their interest. They testified that they also discussed the periodic distribution of financial information on the business. Alonzo Wallette testified that they were never told they were being excluded from the business.
Subsequently, Pete Harris began distributing to Mrs. Wallette payments of income from the business. Also, partnership income tax returns were filed for two years reflecting that Mavice Wallette was a 12.5% partner in the business. After June, 1977, the distributions to Mrs. Wallette were discontinued, and the earnings attributable to the Wallette interest were retained to build up the Wallette capital account. Later, at the request of Mrs. Wallette's counsel, she again received distributions from the partnership in an amount sufficient to pay her income tax liability on the business income attributed to the Wallette interest. The remainder of the income attributable to the Wallette interest continued to be retained to increase the capital account.
In 1978 Mr. Harris contacted an attorney to incorporate the cafe. After slow progress was made on this effort, Mr. Harris went to a second attorney who did form a corporation. However, the business was never transferred to the newly formed corporation.
Nevertheless, following the formation of the corporation, the cafe's accountants filed Subchapter S election documents with the IRS and thereafter filed corporate income tax returns showing Mrs. Wallette as owner of 12.5% of the corporation.
Later, when counsel for Mr. Harris realized the business had not been transferred to the corporation, a meeting was held to attempt to do so. At this meeting, Mrs. Wallette was supplied with documents necessary to transfer her partnership interest to the corporation. These documents, which specifically recognized the Wallette 12.5% partnership interest in the Freeman and Harris Cafe, had been prepared by counsel acting for Mr. Harris. Mrs. Wallette *732 declined to execute the documents at that time, and they were never executed by Mrs. Wallette or her children. The cafe was never transferred to the corporation.
Arthur Chapman and his wife, Dover, both died in 1983. By instruments completed April 12, 1984 (a pledge to secure the financing was completed May 11, 1984), Alice Harris sold her partnership interest to the Wallette brothers. Thereafter, tax returns were filed by the corporation showing the brothers as owners of a 6.25% interest each in the corporation.
On May 21, 1984, Pete Harris filed this action seeking to be declared sole proprietor of the cafe. It should be noted that the Wallette brothers also received distributions of business income attributable to their interest purchased from Alice Harris before and after the lawsuit.
The trial judge's conclusion that there was no meeting of the minds is supported by the testimony of Pete Harris. The testimony of Mr. Harris is corroborated to some extent by the testimony of other witnesses who testified Pete Harris had told them he did not want the Wallettes to have any control of the business.
The record shows that Mr. Harris repeatedly admitted that the Wallettes had a proprietary interest in the business. This satisfies the third requirement of Darden v. Cox, supra. The evidence also shows that there was a sharing of profits in that the Wallettes were paid a portion of their share of the business profits and the undistributed portion was credited to their capital account. This satisfies the second requirement of Darden. (There have been no losses since 1976.)
The Wallette position that there was a partnership created after the death of Wilmer Wallette is supported by the testimony of Alonzo and Gerald Wallette and the actions of the parties following Wilmer Wallette's death.
Whether the parties have used the word "partnership" is immaterial in determining whether their enterprise is a partnership. Marie v. Savoie, 470 So.2d 367 (La.App. 5th Cir.1985).
There are no hard and fast rules in making the determination of whether a partnership exists and each case must be considered on its own facts. Carr v. Masters, 469 So.2d 1147 (La.App. 4th Cir.1985). The consent to form a partnership may be inferred from circumstantial evidence. Carr v. Masters, supra.
The operation of an enterprise as a partnership has been held proof of the intention to form a partnership despite the lack of a formal partnership agreement. Pertuit v. LaBlanc, 240 So.2d 777 (La.App.2d Cir. 1970).
The testimony of the Wallette brothers is that they met with Pete Harris and Arthur Chapman at a meeting called by Pete Harris and that they left that meeting with the understanding that Pete Harris would continue to manage the business; that they, the Wallette family, would "step into the shoes" of Wilmer Wallette; and that Mavice Wallette would receive the benefit of their interest. At trial, Pete Harris testified he had acted for Alice Harris since Mr. Wallette became ill. This testimony is strongly supported by the evidence of the actions of the parties.
Mr. Harris was left in control of the day-to-day management of the business. This is consistent with the operation of the business before Mr. Wallette's death and with Mr. Harris's expressed desire that Mrs. Wallette not share in the management of the business.
Mrs. Wallette received distributions of income from the business, and the Wallette capital account was credited for its share of undistributed income. Later, the Wallettes were required to build up this account by leaving their share of the profits, except an amount to pay taxes, in the business. Also, the Wallettes were provided some financial reports.
Mr. Harris attempted to incorporate the business in an effort to protect against control by Mrs. Wallette. In connection with the proposed change from partnership to corporation, documents to transfer the Wallette interest in the business to the corporation were prepared. These documents *733 describe the Wallette interest as a partnership interest.
The business accountants filed federal tax returns showing Mavice Wallette as a 12.5% partner in the business. Later, after the business began filing corporate returns, the filings listed Mavice Wallette as owner of 12.5% of the business. The ownership of the interest purchased by the Wallette brothers from Alice Harris was also recognized in these filings.
Pete Harris contends that the federal tax filings are entitled to no weight. According to Harris's argument, they merely reflect the Wallette partnership interest for the purpose of determining if a partnership was created including the widow and children of Wilmer Wallette after his death. In support of this contention, Harris relies on Evans v. C.I.R., 447 F.2d 547 (7th Cir. 1971). The trial judge accepted this contention of Harris in reaching his determination that no new partnership was created that included the widow and children of Wilmer Wallette. Evans states that whether an enterprise is taxed as a partnership is controlled by federal rather than state law. Evans does not hold that the filing of a partnership return is not some evidence of the existence of an intent to form a partnership under state law.
The Wallettes contend, relying on Ogden v. Ogden, 331 So.2d 592 (La.App. 1st Cir. 1976), writ denied, 337 So.2d 523 (La. 1976), that the filing of federal partnership income tax returns are indicative of an intent to operate a business as a partnership. We note that the case of Glover v. Sowada, 457 So.2d 101 (La.App. 5th Cir.1984), writ denied, 461 So.2d 316 (La.1984), recognized the filing of business tax returns as a sole proprietorship for a period of four years supported the conclusion that no partnership had been formed.
We agree with Ogden and Glover that income tax returns are entitled to some evidentiary weight for the purpose of determining if the business is a partnership.
Pete Harris also argues that the failure of the Wallettes to work in the business shows they were not partners. That fact, while of interest, is not dispositive. The evidence is clear that Alice Harris was a partner but that she did not work in the business.
Our review of this entire record shows that there is some evidence which supports the trial judge's finding of "no meeting of the minds." However, the much greater weight of the totality of the evidence is contrary to the trial judge's finding. Under these circumstances, we conclude that the trial judge was clearly wrong in finding that no new partnership including the Wallettes had been formed immediately following the death of Wilmer Wallette. We are particularly impressed by the fact that the Wallette family was consistently treated as a partner for tax and capital account purposes subsequent to Mr. Wallette's death. Also, of particular importance is the effort to incorporate, which, if effective, would have specifically recognized the Wallette family interest to the same extent that Mr. Wallette enjoyed at his death.
We now consider whether the Wallette brothers, Gerald and Alonzo, acquired an additional partnership interest by virtue of their purchase of the interest owned by Alice Harris.
Pete Harris contends the Wallette brothers acquired nothing more than the right to receive the value of Alice Harris's interest on the date of the purchase and that they did not acquire any additional partnership interest. The Wallette brothers contend that their purchase has been impliedly approved by Pete Harris by his action in treating them as partners following the purchase and that they acquired an additional partnership interest.
The evidence shows that Alice Harris wanted to sell her interest and received offers from both Mr. Harris and the Wallette brothers. She accepted the Wallette brothers' offer as it was for a greater sum. Subsequently, she executed documents transferring her entire interest to the Wallette brothers.
*734 Following this sale, Mr. Harris issued a joint check to the Wallette brothers for a distribution of profits attributable to the interest they had purchased from Alice Harris. Gerald Wallette then called Mr. Harris and asked that separate checks be issued to himself and his brother, and Mr. Harris agreed to do so.
Also, on the business tax filings after their purchase from Alice Harris, the Wallette brothers were recognized as owners of 6.25% each of the business and that portion of the business income was attributed to them.
While the aforesaid actions are contrary to the finding of the trial court, there are other factors which operate to substantiate the trial court ruling. It will be recalled that the Wallette brothers purchased the Alice Harris interest only some six weeks prior to the filing of this suit and that the arrangements to finance that purchase were not completed until approximately twenty days prior to the filing of this suit on May 31, 1984. It seems clear that the parties were at odds at the time Mrs. Harris sold her interest.
Considering these factors, and that the trial judge specifically resolved all credibility issues in favor of Mr. Harris, we do not believe it can be said that the trial judge was clearly wrong in determining that Pete Harris did not agree to an expansion of the Wallette brothers' partnership interest in the business. One partner may not obtain a larger partnership interest simply by buying the interest of a partner without the consent of all of the remaining partners. LSA-C.C. Art. 2807; Bourgeois v. Medical Center of East New Orleans, 482 So.2d 795 (La.App. 4th Cir.1986). Therefore, the Wallette brothers are entitled to the value of the Alice Harris interest at the time of that purchase, but are not entitled to an expansion of their partnership interest thereby.
We finally consider the contention of the successions of Arthur Chapman and Dover Chapman that the Chapman successions should be considered as owning a continuing partnership interest through this time.
The death of Arthur Chapman on July 14, 1983 terminated his membership in the partnership. LSA-C.C. Art. 2818. The record does not show that the Chapman successions became partners in any new partnership after his death. For this reason, we reject the contention that the Chapman successions have any continuing partnership interest in the business. However, the successions are entitled to be recognized as owners of a right to receive an amount equal to the value of Arthur Chapman's share on the date of his death plus legal interest from July 14, 1983. LSA-C.C. Arts. 2823 and 2824.
Following the death of Arthur Chapman, the Chapman partnership interest terminated and the remaining partnersthe Wallette family, Pete Harris and Alice Harriscontinued as partners with their percentages of ownership increased proportionally to 20%, 60%, 20%, respectively. LSA-C.C. Art. 2818, Comment A.
We recognize the Wallette family as owners of a 12.5% partnership interest from Wilmer Wallette's death until July 14, 1983, and thereafter until April 12, 1984, as owners of a 20% partnership interest, and thereafter as owners of a 25% partnership interest.
We recognize Pete Harris as owner of a 37.5% partnership interest from April 12, 1976 until July 14, 1983, and thereafter until April 12, 1984, as owner of a 60% partnership interest, and thereafter as owner of a 75% partnership interest.
We recognize Gerald and Alonzo Wallette as owners of the value of Alice Harris's 20% interest as of April 12, 1984, as a result of their purchase of the Alice Harris partnership interest.
The Wallettes are also entitled to an accounting by Pete Harris for partnership assets from April 12, 1976, until the present.
For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part and recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Mavice Wallette, Nola Wallette *735 Washington, Gerald Wallette and Alonzo Wallette recognizing them as owners of a 12.5% partnership interest in the Freeman and Harris Cafe from April 12, 1976, until July 14, 1983, and, thereafter until April 12, 1984, as owners of a 20% partnership interest, and thereafter as owners of a 25% partnership interest in the Freeman and Harris Cafe.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Pete Harris recognizing him as owner of a 37.5% partnership interest in the Freeman and Harris Cafe from April 12, 1976, until July 14, 1983, and, thereafter until April 12, 1984, as owner of a 60% partnership interest and thereafter as owner of a 75% partnership interest in the Freeman and Harris Cafe.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Gerald Wallette and Alonzo Wallette against the Freeman and Harris Cafe, a partnership, for the value of the Alice Harris 20% partnership interest on April 12, 1984, with legal interest thereon from that date until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the Succession of Arthur Chapman and the Succession of Dover Chapman against the Freeman and Harris Cafe, a partnership, for the value of Arthur Chapman's 37.5% partnership interest on July 14, 1983, with legal interest from that date until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Mavice Wallette, Nola Wallette Washington, Gerald Wallette and Alonzo Wallette against Pete Harris ordering him to account for the property, income and expenses of the Freeman and Harris Cafe, a partnership, from April 12, 1976, to the time of the accounting which shall be made within six (6) months of the date of the finality of this judgment.
The costs of this matter are taxed seventy-five percent (75%) against Pete Harris, and twenty-five percent (25%) against Alonzo Wallette and Gerald Wallette.
AFFIRMED IN PART, REVERSED IN PART AND RECAST.
JASPER E. JONES, J., approves that portion of the opinion which reverses the judgment appealed and dissents from that part of the opinion which affirms the trial court judgment with written reasons.
JASPER E. JONES, Judge, dissents from that part of the opinion which affirms the Trial Court Judgment.
The opinion of the majority recognizes the payments of profits from the business to the widow of Wilmer Wallette and the recognition of her proprietary interest in the business by filing partnership and corporate tax returns as evidence of the acceptance by Pete Harris of the widow and the heirs of Wilmer Wallette as partners. While there were other evidentiary factors that supported this conclusion these two are among the more important considerations upon which the trial judge was reversed as clearly wrong in his finding that Pete Harris did not accept the widow and heirs of Wilmer Wallette as partners.
The majority opinion recognizes that Pete Harris paid Alonzo and Gerald Wallette profits from the business attributable to the interest they purchased from Alice Harris and that tax returns prepared at the direction of Pete Harris also reflected the proprietary interest of Alice Harris in the partnership as transferred to Alonzo and Gerald Wallette. The majority relied upon similar circumstances to find Pete Harris consented to a partnership with the Wilmer Wallette interest. These actions by Pete Harris with regard to the interest received by Alonzo and Gerald Wallette from Alice Harris are totally inconsistent with his present contention that the Alice Harris transaction entitled the purchasers to nothing more than the value of Alice Harris's prorata share of the assets of the partnership as of the date of the sale. The manner in which Pete Harris treated the Alice Harris transaction when considered against the background of his treatment of the interest of Wilmer Wallette requires the *736 conclusion that Pete Harris considered that the Alice Harris interest in the business remained in the partnership and increased the partnership interest of Alonzo and Gerald Wallette. The fact that the declaratory judgment action was instituted six weeks following the Alice Harris transaction does not provide justification to conclude that Pete Harris had not accepted the transaction as one which increased the Wallettes' interest in the partnership at the time it occurred. No doubt Pete Harris made an offer to purchase the Alice Harris interest because he considered the acquisition of the Alice Harris interest as an opportunity to increase his interest in the partnership and as a method of preventing Alonzo and Gerald Wallette from increasing their interest in the partnership.
The majority affirms the trial court's rejection of the Wallette brothers' demand to be recognized as owner of the partnership interest acquired from Alice Harris based upon the trial judge's conclusion that Pete Harris was more credible and the timing of his filing of this action.
I do not lightly disregard the findings of credibility of a trier of fact. However, here the record strongly shows that the trial judge's conclusions as to credibility are unsupported.
First, the actions of the Wallette brothers and Pete Harris are fully consistent with the testimony of the Wallette brothers concerning their acquisition of and Mr. Harris' consent to their acquisition of the Alice Harris partnership interest. Second, the actions of Pete Harris concerning the Wallette brothers' acquisition of the Alice Harris interest are inconsistent with his testimony. Third, the trial judge's conclusions as to the credibility of Pete Harris have been impliedly rejected by the majority in their disposition of the issue of whether a new partnership including the Wallette family was formed after Wilmer's death.
The trial judge's conclusions as to the credibility of Pete Harris are so ill founded as to fall outside the range of his great discretion on that matter. Without the prop of the credibility finding the timing of the lawsuit provides little support for the majority's conclusions on the Alice Harris transaction. I conclude, that the great weight of the evidence concerning the Alice Harris partnership interest is on the side of the Wallette brothers and the factual finding of the trial judge, while perhaps supported by some evidence, is clearly wrong.
I respectfully dissent from the portion of the majority opinion that refused to recognize that Alonzo and Gerald Wallette increased their pro rata interest in the Freeman and Harris partnership by their acquisition of the Alice Harris interest in the partnership.

ON APPLICATION FOR REHEARING
Before JASPER E. JONES, SEXTON, LINDSAY, FRED W. JONES, Jr. and NORRIS, JJ.
Rehearing denied.