655 So.2d 582 (1995)
Robert R. SMITH, Plaintiff-Appellant,
v.
Thomas E. SCOTT & Anita Scott, Defendants-Appellees.
No. 26849-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1995.
*583 Rellis P. Godfrey, Shreveport, for appellant.
Bobby D. Sutton, Jr., Shreveport, for appellee.
Before BROWN, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
The plaintiff, Robert R. Smith, appeals the judgment of the trial court in favor of the defendants, Thomas E. and Anita Scott, finding that Smith had been fully compensated for the value of his share of the partnership with Thomas E. Scott. We affirm.

FACTS AND PROCEDURAL HISTORY
In May 1987, the plaintiff, Robert R. Smith, and defendant Thomas E. Scott, entered into a business arrangement to operate S & S Pawn Shop. Smith's initial investment in the business was $10,000 plus two or three new guns. Scott contributed various equipment and inventory, which he valued at $40,100. The business agreement was never committed to writing and the nature of each party's interest in the arrangement is not clear. Smith and Scott agreed that neither of them would draw a salary from the business until the pawn shop was profitable. However, Smith acknowledged that on one occasion, he wrote a check in the amount of $1,500 to himself for salary. After having been in business approximately eight and one-half months, Smith and Scott verbally agreed to end their business association retroactively effective December 31, 1987. However, they later disagreed as to the terms of this disassociation. Smith contended that Scott was to purchase his interest in the shop for $22,500. Scott maintained that he, Scott, would pay Smith $10,000, the amount of Smith's original investment. Subsequently, Scott caused two checks, one in the amount of $4,000 and one in the amount of $1,500, to be issued to Smith. Thereafter, Smith filed suit against both Scott and his wife, Anita, seeking $17,000, the alleged balance due for his interest in the partnership.
On January 24, 1990, the trial court rendered judgment in favor of Smith in the amount of $22,500, subject to credits of $7,000. On appeal,[1] this court reversed and remanded because we concluded the trial court had effectively denied Scott the opportunity to cross-examine Smith's expert witness. The remand was for the specific purpose of allowing Scott to cross-examine Smith's expert and for the presentations by either side of evidence related to that cross-examination. Subsequently, Scott applied to this court for supervisory writs and a stay order. In response, this court remanded the case for new trial before a judge of the district court assigned to the civil section, as the former trial judge had been assigned to *584 the criminal section.[2] A second trial was held in November 1992. In January 1994, the trial court ruled in favor of Scott. Smith, the plaintiff, now appeals, specifying seven errors.

DISCUSSION

Specification of Error No. 1
Smith complains that, for various reasons, our disposition of Scott's previous writ application in this case was erroneous. Requests for review of judgments of the court of appeal, including an order granting relief on an application for supervisory writs, should be made to the Louisiana Supreme Court. Supreme Court Rules, Rule X. We find no indication in the record that the plaintiff made writ application to the supreme court. Additionally, counsel for the plaintiff acknowledged during oral argument that the plaintiff made no such writ application. The plaintiff will not be heard to complain for his having failed to timely pursue the proper remedy under Louisiana law. This specification of error is disingenuous and without merit.

Specification of Error No. 2
Smith contends that the trial court erred in finding that S & S Pawn Shop was a partnership, rather than a joint venture. A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit. LSA-C.C. Art. 2801. Although treated much like a partnership, a joint venture is, generally, an agreement for a limited purpose or venture. The principal difference between a partnership and a joint venture is that while a partnership is ordinarily formed for the transaction of a general business of a particular kind, a joint venture is usually, but not necessarily, limited to a single transaction, although the business of conducting it to a successful termination may continue for a number of years. Riddle v. Simmons, 589 So.2d 89 (La.App. 2d Cir.1991), writ denied, 592 So.2d 1316 (La.1992).
Smith, in support of his argument, cites to language in a document filed by the defendants, which states the parties "entered into a joint business venture." The plaintiff's reliance on the defendants' language in the court documents is misplaced. We have previously stated that whether parties have used the word "partnership" is immaterial in determining whether their enterprise is a partnership. Harris v. Wallette, 538 So.2d 728 (La.App. 2d Cir.1989). Likewise, it is immaterial that the parties in the instant case may have referred to their business enterprise as a "joint venture."
Smith cites in further support of his argument, the fact that Scott filed a sole proprietorship tax return for 1987. Income tax returns are entitled to some evidentiary weight for the purpose of determining if a business is a partnership. Harris, supra. However, income tax returns are not dispositive. In making a determination regarding the existence or non-existence of a partnership, or a joint venture, each case must be considered on its own facts and circumstances. Harris, supra; Riddle, supra. In the instant case, the ongoing operation of a pawn shop is more closely akin to the transaction of a general business of a particular kind than to a single business transaction.
A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). The record supports the trial court's finding that a partnership existed rather than a joint venture. On the showing made, we cannot say that the trial court was manifestly erroneous or clearly wrong in its determination that the business enterprise of Smith and Scott was a partnership.

Specification of Error No. 3
Smith asserts that the trial court erred in finding that there was no "meeting *585 of the minds" between the parties as to whether and for what amount Scott would purchase Smith's interest in the pawn shop. The trial court determined that the parties had no "meeting of the minds" other than the agreement that Smith would withdraw from the partnership, effective December 31, 1987.
Smith testified that when he told Scott that he wanted Scott to buy him out of the business for $22,500, Scott did not respond other than to say he would think about it. According to Smith's testimony, the next day Scott indicated that he would buy him out, however, Scott did not specify what he would pay. Scott testified that he never agreed to pay Smith $22,500, but indicated to Smith that he would reimburse Smith his $10,000 contribution to the partnership. According to Scott, Smith never agreed to accept the $10,000. Scott testified that following a request from Smith for funds to hire an attorney for his girlfriend, Scott directed Mark Sompayrac, Scott's stepson and an employee of the pawn shop, to write a check to Smith for $4,000. Scott further instructed Sompayrac to note on the check that a balance was due of $6,000. Sompayrac's testimony corroborated Scott's testimony. In addition, Sompayrac testified that he wrote down the instructions as Scott gave them over the telephone. The Scotts introduced into evidence Sompayrac's handwritten note of Scott's instructions:

To Robert Smith

2/2/88check for $4,000.00

Ballance [sic]$6,000.00
The plaintiff admits altering the memo on the check to change the "6" to an "8." This alteration was made in blue ink although the check was written in black ink. The balance memo on the check reads "$16,000.00" (or, "$18,000.00", as altered), with the "1" written in black ink. The source of the "1" in the memo was disputed, prompting the parties to bring in handwriting experts. Smith argues that the check is evidence of a meeting of minds regarding the amount Scott agreed to pay. He asserts that the $4,000 amount of the check, plus a balance due of $18,000, plus approximately $500 owed to the pawn shop by Smith's family, totals $22,500, the amount Smith claims Scott agreed to pay for his interest in the partnership.
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell, supra. Obviously, in the instant case, which is replete with contradictory testimony, the trial court was forced to make evaluations of the credibility of the witnesses. The finding of the trial court that Smith and Scott had no "meeting of the minds" other than the agreement that Smith would withdraw from the partnership, effective December 31, 1987, is reasonable and supported by the record. We cannot say that the trial court was manifestly erroneous or clearly wrong in this determination.

Specification of Error No. 4
By this specification, Smith challenges the trial court's determination that the partnership consisted of only two members and consequently the partnership ceased to exist as a legal entity on December 31, 1987. In support of his argument, Smith again relies on language in pleadings filed by Thomas and Anita Scott, in which they refer to themselves, in the plural, as having been involved in the business venture.
The trial court's identification of the members of the partnership is a finding of fact, and, as such, we will not disturb the finding in the absence of manifest error. Rosell, supra. In reviewing the record, we find ample support, some of which is supplied by Smith's own testimony, for the trial court's finding that only Smith and Thomas E. Scott were partners in the business. We cannot say that the trial court was clearly wrong in its determination that the partnership was comprised of two members, Robert R. Smith and Thomas E. Scott.
Smith argues that because Scott continued to operate the pawn shop, the partnership continued. However, Smith confuses the termination of a partnership as a legal entity with the termination of a business. Louisiana Civil Code Article 2826 clearly provides that a partnership is terminated by the reduction of its membership to one person. In *586 addition, under Article 2828, if a partnership terminates because its membership is reduced to one person, that person is not bound to liquidate the partnership and may continue the business as a sole proprietor.
Having found that the partnership consisted of two members, Smith and Scott, the trial court correctly applied Article 2826, in determining that when Smith withdrew, leaving Scott as the sole member, the partnership as a legal entity terminated. As the sole remaining member, Scott was not required to liquidate the business, S & S Pawn Shop, and had the option of continuing the business as a sole proprietorship. This specification of error is without merit.

Specifications of Error No. 5 & 6
Smith next contends the trial court erred in applying the codal provisions governing the dissolution of a partnership, in determining how the assets should have been divided. He argues that the trial court should have applied Article 2823. In support of his argument, the plaintiff cites Shopf v. Marina Del Ray Partnership, 549 So.2d 833 (La.1989).
We find Shopf factually distinguishable from the instant case in that when Shopf withdrew as a member of the partnership, there were several remaining members and the partnership continued. However, Shopf is helpful in that it clearly directs, "In the event of termination of the partnership, the partnership assets are divided according to La.C.C. arts. 2833-2834." Shopf, supra, at 837.
LSA-C.C. Art. 2833 provides:
The creditors of a partnership shall be paid in the following order of priority: secured creditors in accordance with their security rights; unsecured creditors who are not partners; unsecured creditors who are partners.
If any assets remain after the payment of all secured and unsecured creditors, the capital contributions shall be restored to the partners. Finally, any surplus shall be divided among the partners proportionally based on their respective interests in the partnership.
In his brief, the plaintiff urges that his interest in the partnership is, at a minimum, $37,585.50. However, the plaintiff's calculations are not consistent with LSA-C.C. Art. 2833 in that the plaintiff does not consider the liabilities of S & S Pawn Shop or the return of capital contributions to the partners. Although the trial court did not provide its calculations for the record, it is apparent after a review of the record, that the trial court adopted, generally, the calculations of the defendants.
In summary, the gross assets of S & S Pawn Shop as of December 31, 1987, are determined, by adding the value of inventory, the bank balance, equipment, and receivables. The gross assets totalled $49,717.00. The partnership owned no immovables and had no secured creditors. The debts owed to non-partner unsecured creditors ($2,186.00, the operating expenses due for December 1987) are deducted, leaving $47,531.00. From this subtotal, debts owed to Scott as an unsecured creditor partner ($15,091.25, reflecting loans from Scott to S & S Pawn Shop for cash flow and for Sompayrac's wages) are subtracted. The remaining value, $32,439.75, is insufficient to reimburse each partner's capital contribution as required by LSA-C.C. Art. 2833.
In the absence of a contrary agreement, contributions to capital are restored to each partner according to the contribution made. LSA-C.C. Art. 2803. Here, Smith's contribution was $10,000 plus two or three new guns and Scott's contribution was inventory and equipment valued at $40,100. Using a pro-rata distribution of the remaining assets of the partnership, based upon Smith's having contributed approximately 20% and Scott's having contributed approximately 80% of the capital, Smith is entitled to approximately $6,487.95 of the $32,439.75, the remaining value of the partnership.
The record shows that Smith received $5,500 in checks authorized by Scott plus the $1,500 check he wrote to himself on the S & S Pawn Shop account. The trial court concluded that Smith had received a sum of $7,000, which equals or exceeds the value of his share at the time the partnership terminated and, accordingly, had been fully compensated *587 for his interest in S & S Pawn Shop. Because some of the values or amounts necessarily relied upon for the calculations lacked documentary or objective evidence and were disputed by the testimony of the parties, additional evaluations of credibility are implicit in the trial court's determination of the amount Smith is entitled to receive. We do not disturb such findings of fact in the absence of manifest error. Rosell, supra. After a review of the record, we find the trial court applied the correct Civil Code provisions in determining what Smith is entitled to receive from the partnership. Furthermore, we cannot say that the trial court was clearly wrong or manifestly erroneous in its determination that Smith has been fully compensated for the value of his interest in S & S Pawn Shop as of the time the partnership terminated. This specification of error lacks merit.

Specification of Error No. 7
Finally, Smith argues that the trial court erred in assessing the fee for the defendants' expert witness in the amount of $400 when there was no testimony or evidence adduced regarding the fee.[3] LSA-R.S. 13:3666 provides for expert witness fees to be fixed by the court and states in pertinent part:
B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:
(1) from the testimony adduced upon the trial of the cause, the court shall determine the amount thereof and include same or,
(2) by rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party cast in judgment, which rule upon being made absolute by the trial court shall form a part of the final judgment in the cause.
LSA-R.S. 13:3666(B). Under LSA-R.S. 13:3666 and C.C.P. Art. 1920, the trial court has great discretion in awarding expert witness fees. Reviewing courts will not disturb an award in the absence of abuse of discretion. Stephens v. Town of Jonesboro, 25,715 (La.App. 2d Cir. 08/19/94), 642 So.2d 274.
Factors to be considered by the trial judge in setting an expert witness fee include time spent testifying, time spent in preparatory work for trial, time spent away from regular duties while waiting to testify, the extent and nature of the work performed, and the knowledge, attainments and skill of the expert. Additional considerations include helpfulness of the expert's report and testimony to the trial court, the amount in controversy, the complexity of the problem addressed by the expert and awards to experts in similar cases. Albin v. Illinois Central Gulf Railroad Co., 607 So.2d 844 (La. App. 1st Cir.1992).
In the instant case, the expert witness, James H. Kelly, testified at trial. Therefore, the trial court had the opportunity to note the length of Kelly's testimony, to hear testimony regarding his credentials and experience, to hear testimony regarding the nature and extent of the work he performed in preparation for trial, and to assess the helpfulness of his testimony to the court. Thus, the trial court was not without testimony or evidence to aid in its determination of *588 Kelly's expert witness fee. The plaintiff has not demonstrated to our satisfaction any abuse of the trial court's broad discretion in awarding expert witness fees. The trial court's award of expert witness fees in the amount of $400 for James H. Kelly is affirmed.

CONCLUSION
We find each of the specifications of error by the plaintiff to lack merit. For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to the plaintiff, Robert R. Smith.
AFFIRMED.
NOTES
[1] Smith v. Scott, 577 So.2d 809 (La.App. 2d Cir.1991).
[2] Smith v. Scott, 23,353 (La.App. 2d Cir. 07/03/91).
[3] In his brief, the plaintiff/appellant states that after the January 6, 1994 ruling of the trial court, the appellees contacted the appellant regarding the expert witness fees of James H. Kelly. The plaintiff further states, "Appellant agreed that a formal rule to show cause would not be required. Appellant never agreed evidence and testimony could be dispensed with." Subsequently, according to the briefs of both parties, invoices from Kelly, totalling $2460, were submitted to the trial court. In its judgment of January 25, 1994, the trial court fixed Kelly's fee at $400. The defendants contend that the plaintiff, who waived the necessity of a rule to show cause to assess expert witness fees and consented to submit letters and invoices to the court in lieu of such proceedings, should not be heard to complain of a procedure to which he acquiesced. We are inclined to agree. However, we do not find in the record before us documentation of the plaintiff's waiver or a request by the trial court for submissions regarding expert fees and claims. Nor do we find in the record a letter of January 14, 1994 from the trial court to both counsel, which is referenced in the defendants' brief and in the trial court's judgment, and which apparently addressed the assessment of expert witness fees. Because of the absence of this information from the record, and our reluctance to rely on information provided solely in the briefs, we do not decide this specification of error on these grounds.