2SHORTESS, C.J.
Can the words “I’ll look into it” obligate a real estate broker to perform certain services? That is the issue before the court in this case.
Brewster Stalter, II, and his brother Rowland Stalter (plaintiffs) sued John T. Wood, a real estate broker; John T. Wood Properties, Wood’s sole proprietorship; and Banker Multiple Line Insurance Company, Wood’s errors and omissions insurer. Plaintiffs alleged Wood agreed to “look into” a piece of property for them but failed to do so, thereby depriving them of the opportunity to bid on and purchase the property.
The trial court found Wood had breached no duty toward plaintiffs and that there was never a meeting of the minds between the parties to form a contract. The court dismissed plaintiffs’ suit, and they appeal.
Plaintiffs and their sisters, through a trust, owned a 41-acre tract in Lacombe. Plaintiffs bought a 159-acre tract surrounding their original tract. Wood was the listing agent on the 159-acre tract. On March 6, 1993, after the purchase agreement was signed but before the act of sale was executed, Wood met plaintiffs to walk over the property. While driving to the property, a discussion ensued about a piece of property that appeared to be adjacent to the 159-acre tract. Plaintiffs expressed an interest in buying the tract when it became available for sale if it adjoined their property. Wood told them he thought it would be available soon and agreed “to look into it.”
Although the Stalter brothers were also licensed real estate brokers, they were busy and thought it would be easier to have Wood research the property for them. Rowland testified he called Wood seven or eight times between March 6 and April 14, primarily to discuss the closing on the 159-acre tract, but he mentioned the 25-acre tract during two or three of those calls. Each time, Wood told him he would look into it. Brewster testified he talked to Wood on the telephone two or three times about the 25-acre tract. Wood always told him he was busy but would get to it. Wood testified he did not recall talking to Rowland but had talked to Brewster a few times.
The sale of the 159-acre tract closed on the afternoon of April 14. Wood arrived first and crossed paths with the plaintiffs as he was leaving the closing. [jRowland testified he asked Wood about the 25-acre tract, and Wood said he had not had a chance to look into it. Wood did not recall this conversation. About a week later, plaintiffs noticed a “sold” sign on the 25-acre tract.
Wood testified he learned Secor Bank owned the property and called the bank. Secor told him the property was listed, but not with whom. He testified Secor just “blew [him] off.” He saw the for-sale sign on April 12 and immediately called S. Nell Ted-esco, the listing agent, for information. He then began attempting to call people he knew were interested in the property. He stated he tried to call Brewster, but neither Brewster nor his answering machine answered. He next called Richard Blossman, his longtime friend and former business partner, and made an offer on Blossman’s behalf on the morning of April 14.
Peter J. Penton and his wife lived in a trailer on the 25-acre tract. They had asked Secor about purchasing the property before it was placed on the market. Secor gave Tedesco the property listing on April 9. The *596 Pentons apparently had the inside track on the property. Tedesco testified that when Secor gave her the listing, someone from Secor told her about the Pentons’ interest.
On April 14 at about 10:00 a.m., Tedesco submitted to Secor the Pentons’ offer to buy the property for $52,000.00. About fifteen minutes later, Wood submitted an offer on behalf of Blossman for $50,000.00. Secor made a counteroffer to the Pentons, but not to Blossman, to sell the property for $72,-000.00. The Pentons accepted the counteroffer on April 19, at which point it was a “done deal.”
Plaintiffs contend Wood breached his duty toward them by failing to research the property timely so they could make an offer. Wood, on the other hand, contends he did what he promised plaintiffs: “I told them that I would look into the property, and which I did the best I could. And at that time when I found out what attitude it was in, I tried to contact them.” Alternatively, plaintiffs contend Wood acted fraudulently and lied to them on April 14 when he told them he had not looked into the property, even though he had made an offer on behalf of Blossman a few hours earlier. Wood testified he did not recall speaking to plaintiffs about the 25-acre tract on April 14, and he never agreed to act exclusively on plaintiffs’ behalf [¿when he looked into the property. Brewster himself testified he never tried to prevent Wood from contacting any other prospective purchasers.
The trial court found Wood had no duty “to do for the Stalters, anymore than he did.” The court adopted Wood’s version of the facts, finding:
[H]e did what good real estate agents do-[H]e called Nell Tedesco to determine the price of the property.... Like any good real estate agent would do, he started calling the people he thought w[ere] interested in that property. He testified that he attempted to call Brewster Stalter and that there was no answer on his telephone. I’m sure then Mr. Wood probably called Mr. Blossman.
Finally, the court stated Wood had not “breached any standard of care that may be applicable.”
Factual findings should not be reversed on appeal absent manifest error.[1] If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse.[2] Consequently, when there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong.[3]
The trial court observed the witnesses, heard the testimony, and chose to believe Wood’s version of the events, i.e., that he “looked into” the property and tried to call Brewster. We find no manifest error in the trial court’s conclusion that Wood fulfilled any duty he had toward plaintiffs.
Plaintiffs also contend they had an oral contract with Wood, although they admit there was no discussion about the length of the agreement, whether it was exclusive, or whether Wood would be compensated for out-of-pocket expenses. Wood testified there was no discussion regarding compensation whatsoever, but Brewster testified that while they were speaking “jokingly,” he told Wood he would be paid a full commission if plaintiffs bought the property. The trial court found there was never a meeting of the minds between the parties. This is a factual determination, which may not be disturbed on appeal absent manifest error.[4]
The trial court stated:
[Tjhere was never an agency agreement between these people reduced to writing. There was never any authority on the part of the bStalters for Mr. Wood to make any offer whatsoever of any kind to them. They gave him no authority to do that. *597 There was never any discussion about any terms of any agreement. There was no discussion about how he would be paid. They basically had no agreement.
We find no manifest error in the trial court’s finding that there was no meeting of the minds.
The casual phrase “I’ll look into it” was not the basis of a contract in this case, nor did it obligate Wood to do more than research the status of the property and attempt to contact plaintiffs. Having found no manifest error in the trial court’s factual findings, we must affirm the judgment of the trial court. Plaintiffs are east for the cost of this appeal.
AFFIRMED.

. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).

. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990).

. Housley v. Cerise, 579 So.2d 973, 976 (La.1991); Sistler, 558 So.2d at 1112.

. Belgard v. Collins, 628 So.2d 1254, 1257 (La.App. 3d Cir.1993); Harris v. Wallette, 538 So.2d 728, 730 (La.App. 2d Cir.1989).