11 WILLIAMS, Judge.
Defendant, Hibernia National Bank, appeals a trial court judgment declaring the plaintiff, Charles B. Constanzi, the owner of a modular building placed upon leased premises by the lessee. For the following reasons, we reverse.
FACTS
In April 1989, plaintiffs Charles R. Beck-ham, Charles B. Constanzi and M. Kennon Harvill leased to Hibernia National Bank (“Hibernia”) a tract of land on Highway 80 in Red Chute, Bossier Parish, Louisiana. The written lease granted Hibernia the option to purchase the property upon expiration of the lease in May 1992. The lease also provided that at its expiration, the lessor may retain as owner any permanently affixed structure and improvements constructed by lessee on the leased premises, without reimbursement to lessee for their value.
Hibernia purchased an existing modular building which had been used by Pelican Savings and Loan in Shreveport. Hibernia moved the building onto the leased premises for use as a branch office. Hibernia added a teller window to the building, installed underground utilities and built a concrete parking lot. Prior to the expiration of the lease, Hibernia closed the branch office and removed its sign pole. When plaintiffs learned of this action, they contacted the bank. At *708 that time, Hibernia informed the plaintiffs of its intent to remove the building from the premises. Plaintiffs then filed a petition for a temporary restraining order prohibiting Hibernia from removing the building from the leased premises, and prayed for a judgment declaring plaintiffs the owners of the building. After a hearing, the trial court issued a preliminary injunction preventing the removal of the building. Later, Charles Beckham and Kennon Harvill transferred their interest in the property to Charles Con-stanzi. They then withdrew as parties plaintiff, leaving Constanzi as the single plaintiff.
After a trial on the merits, the trial court orally ruled that the building was permanently attached to the land and rendered judgment declaring Constanzi to be the owner of the building. Hibernia appealed the trial court’s judgment.
laDISCUSSION
Hibernia argues that the trial court erred in finding that the portable building was permanently attached to the land, despite expert testimony to the contrary. Hibernia also contends that the trial court erred in failing to apply the express terms of the lease and in ignoring the demonstrated intent of the parties. In sum, Hibernia’s three assignments of error relate to the issue of which party owns the building under the terms of the lease.
Interpreting a contract or lease involves the determination of the common intent of the parties. LSA-C.C. Art. 2045. Their intent is determined in accordance with the general, ordinary and plain meaning of the words used in a contract. Spohrer v. Spohrer, 610 So.2d 849 (La.App. 1st Cir.1992); Lindsey v. Poole, 579 So.2d 1145 (La.App.2d Cir.), writ denied, 588 So.2d 100 (La.1991); LSA-C.C. Art. 2047.
Louisiana Civil Code articles governing ownership and reimbursement rights when one person makes improvements on another’s land, such as LSA-C.C. Art. 493, apply only in situations where those rights are not regulated by agreement of the parties. Wilson Oil Co. v. Central Oil and Supply Corp., 557 So.2d 753 (La.App. 2d Cir.), writ denied, 563 So.2d 885, 886 (La.1990).
In this case, it is necessary to examine the lease provision regarding the ownership of improvements placed on the leased premises. Paragraph 20.3 of the lease provides that the lessor may retain as owner any “permanently affixed structure and improvements constructed by lessee on the leased premises.... ” Testimony at trial established that the modular building was factory manufactured and had been used as a bank before Hibernia purchased and moved it onto the leased premises. Thus, the building itself was not originally constructed by Hibernia.
Constanzi contends in brief that additions and modifications to the building made by Hibernia after it moved the structure onto the site, such as a drive-through teller window, a parking lot and utility connections, constitute sufficient construction, a term which the lease does not define. Construction is defined as the creation of something new, as distinguished from the repair or improvement of something already existing. |,c¡Black’s Law Dictionary 312 (6th ed. 1990). Under this definition, Hibernia’s installation of plumbing and the addition of a teller station to the pre-existing building did not create a new structure. Thus, the evidence in the record shows that Hibernia did not “construct” the building on the leased premises. Therefore, the lease requirement was not satisfied and Hibernia was entitled to remove the building upon termination of the lease.
Even if Hibernia had constructed the building, the evidence shows that the structure was not permanently affixed to the land, which the lease established as a prerequisite for ownership by Constanzi. The lease did not define the terms “permanently affixed.”
LSA-C.C. Art. 466 provides that things are considered “permanently attached” if they cannot be removed “without substantial damage” to themselves or to the immovable to which they are attached. Although Article 466 refers to the component parts of buildings and structures, this article can be utilized in the present case to determine wheth *709 er the building in question is permanently affixed to the land.
In his trial testimony and brief, Constanzi emphasized that metal pipes were used for sewer and water lines, that electrical fixtures were rigid and that a concrete parking lot and driveway surrounded the building. He also stressed that one and one-half foot square concrete footings were buried in the soil as part of the building’s foundation. He asserted that these items were evidence that the structure was permanently attached to the land. However, Constanzi failed to establish how removal of the building would cause substantial damage to the site or the structure. His main complaint of harm seemed to be that the capped electrical and sewer fixtures, and the configuration of the parking lot, would hamper his ability to obtain another tenant for the site.
This testimony was contradicted by Ralph Kiper, a licensed architect consulted by Hibernia. Kiper testified that the concrete footings and cinder blocks formed the base upon which the building rested. He stated that removal of the building would not cause any real damage to the site, which would be left in better condition than before Hibernia arrived. He also testified that the utility, water and sewer connections could be capped Ubelow the grade of the land so that they would not be obstructions, and that different types of structures could use the same utilities in the future. Kiper’s expert opinion was that the building was not permanently affixed to the ground, but was portable.
A review of the trial transcript and exhibits shows that the building itself rested upon several concrete footings placed just below the soil surface. Although a concrete parking lot, underground utility connections and water pipes would be left behind after the building was moved, the record does not contain evidence that removal would cause substantial harm either to the building or to the leased premises. As a result, the building was not permanently affixed to the land. We must find that the trial court was clearly wrong to conclude otherwise. Under the terms of the lease, Hibernia retains ownership of the building and is entitled to remove it from the site.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed. The appellant, Hibernia Bank, will have thirty days from the date this judgment becomes final to remove the building from the site. Costs of this appeal are assessed to the appellee, Charles Constanzi.
REVERSED.
APPLICATION FOR REHEARING
Before MARVIN, SEXTON, WILLIAMS, JJ., and FELIX H. SAVOIE, Jr., J. Pro Tem.
Rehearing denied.