11WILLIAMS, Judge.
The defendant, U.L. Coleman, III (“Coleman”), appeals the trial court’s judgment authorizing the withdrawal of $90,809.32 with legal interest, from the registry of the district court, by the plaintiffs, Charlton Lyons, Jr., C. Cody White, Jr., Fred Wilson (collectively the “Lyons Group”), and Coleman-Wright Island, a Louisiana Partnership (“CWI”). The trial court denied the plaintiffs’ request to withdraw an additional $17,-045.19 from the court registry. For the following reasons, we reverse in part and affirm in part. ;
*874 FACTS
The plaintiffs and Coleman were partners in a partnership known as Coleman-F.P., a Louisiana Partnership in Commendam (“Coleman-F.P.”). The plaintiffs owned a 96.989 % interest in Coleman-F.P., and Coleman owned the remaining 3.011% interest. Coleman-F.P. and Coleman were equal partners in another Louisiana partnership, known as Coleman-Wright Island Associates, A Partnership (“CWIA”), which owned The Willows Apartments located in Shreveport, Louisiana.
According to the terms of the CWIA partnership agreement for The Willows development, Coleman-F.P. provided land, valued at $784,422, as its capital contribution and Coleman was named the managing partner. Operating income generated by the apartments was to be distributed at the rate of 85% to Coleman-F.P., until it received an amount equal to the value of the land, and fifteen percent (15%) to Coleman. Thereafter, the income would be distributed equally between the partners.
Eventually, disputes arose among the partners and litigation ensued. Coleman-F.P. and the Lyons Group filed actions against the defendant, U.L. Coleman, III, who also filed suit against the Lyons Group. In December 1994, the ^parties entered into a written agreement to settle the pending litigation. As part of the settlement, the parties agreed to submit their future legal disputes to binding arbitration.
Subsequently, the plaintiffs sought to sell their interest in The Willows Apartments to the defendant. The parties were unable to reach an agreement, and in June 1995, plaintiffs filed a demand for an arbitration proceeding against the defendant with the American Arbitration Association. After a hearing, the panel of arbitrators issued an award, which ordered the defendant to purchase either the 50% interest held by Coleman-F.P. in the CWIA partnership, or the 96.989% interest of the Lyons Group and CWT in Coleman-F.P. The plaintiffs filed a motion to confirm the arbitration award.
In May 1996, the trial court rendered a judgment incorporating the terms of the arbitration award. The judgment fixed the fair market value of The Willows at $7,850,000, ordered the preparation of an adjusted accrual basis balance sheet listing all assets and liabilities of CWIA, and required an equalization of the partners’ capital accounts, in order that the plaintiffs receive an amount equal to the sum they would have received from a sale of The Willows Apartments by CWIA to a third party.
Pursuant to a July 30, 1996 Judgment on the Rule, the defendant tendered payment of $727,170.71 to plaintiffs and deposited the amount of $118,072.64 into the district court registry pending further orders of the court. In January 1997, plaintiffs filed a motion to withdraw $107,854.50 of the funds in the court registry on the grounds that Coleman incorrectly calculated the amount owed. The plaintiffs’ claim alleged the following miscalculations: (1) ad valorem taxes, (2) non-equalized capital, (3) disregard of Coleman-FP cash, (4) an understated |3Hibernia account, (5) improperly accrued accounts payable, and (6) several miscellaneous errors. At the hearing on the motion, the defendant stipulated that he owed payment for items 3 through 6, for a total amount of $5,641.82. However, the defendant disputed the plaintiffs’ claims alleging the miscalculation of the ad valorem taxes of $17,045.19, and the improper equalization of the capital accounts of $85,167.50.
In June 1997, the trial court rendered a judgment on the rule, finding that the defendant’s payment was understated by the amount of $90,809.32, a sum which resulted from his failure to properly equalize the CWIA capital accounts, combined with the stipulated balance owed. The trial court denied the plaintiffs’ claim for an additional $17,045.19, based on the overestimated tax liability.
Defendant appeals the trial court’s award of $85,167.50 to the plaintiffs based on its finding that the capital accounts were not correctly equalized. Plaintiffs have filed an answer to the appeal, seeking an award for the tax claim of $17,045.19, with legal interest.
*875 DISCUSSION

Estimated taxes

The plaintiffs contend the trial court erred in finding that the defendant’s calculation of the ad valorem taxes was reasonable. The plaintiffs argue that defendant improperly overestimated the 1996 tax liability and thereby understated the purchase price for their interest in the Coleman-F.P. partnership.
A partner owes a fiduciary duty to the partnership and to his partners. He may not act in a manner that is contrary to his fiduciary duty and is prejudicial to the partnership. LSA-C.C. art. 2809. The relationship of the partners imposes upon them the obligation of good faith and fairness in their dealings with one |4another with respect to partnership affairs. Article 2809, Comment (b).
In the present case, the 1995 ad valorem taxes assessed to The Willows were a total of $50,734. In July 1996, when defendant purchased the plaintiffs’ 96.989% interest in Coleman-F.P., the 1996 tax rate was not available. Defendant testified that in calculating the purchase price for plaintiffs’ interest, he estimated the 1996 ad valorem taxes would be $122,091, based on the established value of $7,850,000 for the apartments. In his Jiily 1996 balance sheet, defendant listed accrued ad valorem taxes of $70,052 as a liability of CWIA. Although plaintiffs objected and sought a lower estimate, defendant refused to adopt the 1995 tax rate, contending that he would then have faced the risk of paying an increased tax assessment in 1996.
However, the defendant’s rationale is not supported by the record. At the time of closing in July 1996, the parties, acting in good faith, could have established an escrow account to provide sufficient funds to cover an actual tax assessment which was higher or lower than the estimated ad valorem tax rate. The defendant’s asserted fear of paying an increased tax' assessment does not justify imposing that risk on the plaintiffs, when there was an alternative method available to more equitably share the tax liability, and particularly in light of the defendant’s fiduciary duty to his partners. Based upon this record, we must conclude that the defendant’s calculation of the ad valorem taxes was not reasonable under the circumstances.
The parties agree that the actual 1996 ad valorem tax of $60,258, prorated through the closing date, resulted in an accrued tax total of $34,903. Thus, there was an excess deduction from the partners’ total equity in CWIA of $35,149. This amount, when divided by Coleman-F.P’s 50% interest in CWIA, and multiplied by 15the plaintiffs’ 96.989% interest in Coleman-F.P., requires that the purchase price be increased by an additional payment of $17,045 to the plaintiffs. Accordingly,- we will reverse that part of the trial court’s judgment denying plaintiffs’ claim based.on the overestimated tax liability.

Equalization of Capital Accounts

The defendant contends the trial court erred in finding that he understated the purchase price owed to plaintiffs for their partnership interest. The defendant argues that he properly equalized the partners’ capital accounts by allocating the projected gain from a deemed sale of partnership property.
A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840 (La.1989). In the event of termination of the partnership, its assets are divided according to the provisions of LSA-C.C. arts. 2833 and 2834. Shopf v. Marina Del Ray Partnership, 549 So.2d 833 (La.1989); Smith v. Scott, 26,849 (La.App.2d Cir. 5/10/95), 655 So.2d 582.
In the present ease, the trial court found that defendant’s CWIA capital account was $175,623 less than that of Coleman-F.P. The defendant and his accountant, William Cole, testified that a portion of this imbalance, $74,933, was the sum of the 15% cash distributions which defendant had received at the time of the December 1994 settlement. The record does not indicate that the distributions to defendant were a fee for his duties as managing partner. Defendant testified that his management firm was paid a fee to operate the apartments.
*876 In his brief, defendant contends that increasing the amount of his payment Rto plaintiffs to equalize the capital accounts would effectively require him to return or bring back the amount of the cash distributions which he received pursuant to the partnership agreement. Defendant maintains that such a result would be unfair and contrary to the partnership agreement.. However, as noted previously, defendant acknowledges that his receipt of those distributions is reflected as a deficit in his capital account. Despite defendant’s assertions, the partnership contract does not provide for different treatment of that portion of his capital account deficit attributable to the cash distributions. The partnership agreement merely specifies that the partners’ capital accounts will be equalized.
The defendant also contends that the equalization sought by plaintiffs would require him to return the value of a $100,000 “credit” he purportedly received as a result of a 1990 settlement. Although this agreement is not contained in the record, defendant testified that there was a dispute with the Lyons Group concerning payment of $200,000 to Hibernia National Bank for a partnership debt.
Trial testimony indicated that in 1990, the parties agreed to treat this payment as a partnership distribution to each CWIA partner, and 50% of the amount, $100,000, was charged to the capital accounts of Coleman-F.P. and the defendant. Apparently, Coleman-F.P. agreed to apply the resulting debit to offset $100,000 of recoupment payments to which it was entitled. The apparent effect of the transaction was a comparable $100,000 debit to defendant’s capital account. On this record, defendant has not established the basis of his claim that he received a subsequent credit for this capital account deficit.
In addition, the 1994 partnership tax return, introduced into evidence, demonstrates that the defendant’s CWIA capital account was $175,621 less than that of Coleman-F.P. This tax return was signed by the defendant, who later ^admitted that the amount of the capital account deficit was $175,623 in his response to plaintiffs’ request for admissions. Considering all of the evidence, we cannot say the trial court was clearly wrong in finding that the amount of defendant’s capital account imbalance was $175,623. The defendant’s argument lacks merit.
The defendant next contends that the trial court erred in finding that he failed to properly equalize the partners’ capital accounts. The May 1996 judgment assigned a fair market value of $7,850,000 for The Willows, and required that the partners’ capital accounts be equalized. Paragraph “v” of the judgment then provided that:
[T]he foregoing shall be accomplished in accordance with generally accepted accounting principles and to the end that the Lyons Group and CWI shall have received precisely those dollar amounts that they would have received if: (a) The Willows Apartments had been sold by CWIA to a third party for a net purchase price of $7,850,000; and (b) CWIA and Coleman-F.P. had been liquidated.
Defendant argues that pursuant to paragraph “v” of the May 1996 judgment, the CWIA capital accounts should be equalized through allocation of the projected gain from a “deemed” sale of The Willows Apartments. According to the defendant, this method is required by section 8.4 of the partnership agreement, which provides that the gain from a sale of partnership property shall be allocated so as to equalize the capital accounts of the partners. We disagree.
Interpreting a contract involves the determination of the common intent of the parties. LSA-C.C. art.2045. Their intent is determined in accordance with the general, ordinary and plain meaning of the words used in the contract. LSA-C.C. art.2047; Beckham v. Hibernia Nat. Bank, 27,638 (La.App.2d Cir. 12/6/95), 665 So.2d 706.
IsThe plain meaning of the language in section 8.4 of the parties’ contract contemplates the allocation of real gain produced by an actual sale of partnership property. Consequently, there cannot be an allocation of gain as advocated by defendant because a sale of partnership property has not occurred. Paragraph “v” of the judgment requires that the plaintiffs receive those dollar amounts which they would have received if The Willows had been sold. As illustrated by section 8.4, an actual sale of the partner *877 ship asset would have resulted in a sum of money, which would have been distributed to equalize the partners’ capital accounts.
However, in the present transaction, defendant is purchasing the plaintiffs’ interest and retaining control of the partnership property. Thus, in order to comply with the trial court’s judgment and deliver to plaintiffs the dollar value they would have received in the event of a sale, the defendant must pay to plaintiffs an amount sufficient to equalize the partners’ capital accounts. This outcome accomplishes the object of the arbitration award and is consistent with the provisions of the partnership agreement.
After considering all of the evidence and reviewing the entire record, we cannot say the trial court was clearly wrong in finding that the defendant failed to properly equalize the partners’ CWIA capital accounts and thus understated the purchase price owed to plaintiffs by the amount of $85,167.50. The defendant’s assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, that part of the trial court’s judgment denying the plaintiffs’ claim for $17,045 due to the overestimated ad valorem tax liability is reversed, and judgment is rendered in favor of plaintiffs for that amount. The trial court’s judgment is otherwise affirmed. Therefore, the plaintiffs, Charlton Lyons, |9Jr., C. Cody White, Jr., Fred Wilson (collectively the “Lyons Group”), and Coleman-Wright Island, a Louisiana Partnership, are hereby authorized to withdraw from the registry of the district court the amount of $107,854.82, with legal interest from the date of judicial demand. Costs of this appeal are assessed to the defendant, U.L. Coleman, III.
REVERSED IN PART AND AFFIRMED IN PART.
APPLICATION FOR REHEARING
Before MARVIN, C. J., and NORRIS, HIGHTOWER, WILLIAMS and STEWART, JJ.
Rehearing denied.