JjKOSTELKA, J.
In this suit for declaratory judgment, U.L.Coleman, III (“Coleman”) appeals the trial court denial of his exception of prematurity and the granting of judgment denying any further claims regarding restrictive covenant agreements. We affirm.

Facts

The Lyons Group, (Charlton Lyons, Jr., C. Cody White, Jr., Fred Wilson), Nelson Abell, III, and U.L. Coleman, III, formed Coleman-Wright Island (“CWI”) partnership in 1980 for the purpose of acquiring an approximate sixty-five-acre tract of land known as Wright Island in Shreveport, Louisiana. CWI developed the tract for commercial and residential use. Part of that project included the development of The Willows apartment complex (“Willows”) located on over eleven acres of the tract. For the purpose of construction and operation of the complex, CWI deeded that tract to Coleman-Wright Island Association (“CWIA”). CWIA was comprised of U.L. Coleman, III, individually, as a one-half interest partner and Coleman-F.P., a Louisiana partnership in commendam, as the other one-half interest partner. Coleman-F.P. included CWI and Fant Parkway Development Company, Ltd.
Various disputes between the parties, however, eventually resulted in litigation which precipitated a December 12, 1994 settlement agreement. Regarding restrictive covenants, the settlement agreement provided that the parties would “make a good faith effort to reach a joint determination with Mr. Coleman as to the form and text of ‘restrictive covenants’... for the undeveloped land at Wright Island .... ” The parties also agreed to arbitration of any future disputes including those arising from restrictive covenants. Despite the use of mutual counsel, however, further attempts to agree on these restrictive covenants failed.
| ¿Thereafter, on June 1, 1995, the Lyons Group, Coleman-F.P., and CWI commenced an arbitration proceeding primarily seeking the enforcement of mandatory purchase obligations by Coleman. The Arbitration Panel rendered an Award in Arbitration which provided certain options for the parties’ settlement of partnership debts including Coleman’s outright purchase of the Willows, and “was in full settlement of all claims submitted in Arbitration.” The award did not specifically mention relief regarding the restrictive covenants.
*215 The First Judicial District Court confirmed the arbitration award as a judgment of the court on May 10, 1996, after the Lyons Group, Coleman-F.P., and CWI so petitioned. Attorney fees were also awarded in that judgment.
On July 30, 1996, in accord with the arbitration judgment, Coleman, through his designee-buyer, Dee Street, L.L.C., Coleman-F.P. and CWI[1] entered into a Bill of Sale and Assignment of Partnership Interests (“sale agreement”) concerning the Willows, and in that document the parties mutually released each other from, “... any and all causes of action, claims, debts, demands, obligations, liabilities, benefits or costs, of whatever kind or character, known or unknown, in the past and up to the date of this agreement that Mr. Coleman or any of them had asserted or may have asserted....”[2]
On January 28, 1997, the Lyons group and CWI filed the present declaratory judgment action asking the court to declare that any right Coleman may have had to demand restrictive covenants under the December 12, 1994 agreement are forever barred as res judicata by the court’s confirmation of the arbitration award and/or by Coleman’s express relinquishment of his rights in the sale agreement of July 30,1996.
|3On March 7, 1997, Coleman filed an exception of prematurity arguing that neither was he precluded from claiming restrictive covenants because the arbitration award did not resolve that issue, nor did he intend to release those rights as to Wright Island in the July 30, 1996 sale agreement. Coleman prayed that plaintiffs be ordered to enter into negotiations regarding the restrictive covenants, and into arbitration if those negotiations failed.
Based upon both Coleman’s and Lyons’ testimony, documentary evidence and affidavits submitted at a hearing on the exception of prematurity, the court denied Coleman’s exception by judgment dated May 19, 1997. The court specifically found that the July 30, 1996 sale agreement contained mutual releases which completely and fully released plaintiffs from any claim regarding restrictive covenants and that the May 10, 1996 judgment affirming the arbitration award barred, by res judicata, any further restrictive covenant claims by Coleman.
Thereafter, the case was submitted for trial on the evidence presented at the hearing on the exception. The court rendered its opinion on the declaratory judgment on April 7, 1998, again confirming that Coleman was barred from claiming or demanding restrictive covenants based upon the July 30, 1996 release and the May 10, 1996 final judgment. This appeal ensued.

Discussion

Coleman appeals both the trial court’s denial of his exception of prematurity and the judgment in favor of the Lyons group - and CWI but concedes that the pivotal issue in resolving both of these claims is whether or not the issue of restrictive covenants was included in the original arbitration judgment and/or the July 30, 1996 sale agreement and release. He also claims that the court erred in failing to admit into evidence his testimony regarding his understanding of the |4scope of the July 30, 1996 release and therefore in failing to set aside that agreement based upon error.
Courts are bound to give legal effect to all written contracts according to the true intent of the parties, and that intent is to be ascertained by the words of the contract when clear, explicit, and leading to no absurd consequences. La. C.C. *216 art.2045, 2046; Amend v. McCabe, 95-0316 (La.12/01/95), 664 So.2d 1183. Only where the agreement is unclear, ambiguous, or will lead to absurd consequences, should a court go beyond the written agreement to gather the parties’ true intentions. Id. A settlement or release of an obligation, to have.legal validity, must possess the essential elements of any other contract. Branch v. Alexander, 231 La. 487, 91 So.2d 767 (1956).
Finding that Coleman waived all rights relating to any further restrictive covenant claims in the July 30, 1996 Bill of Sale and Assignment of Partnership Interests, we first address that contract. In pertinent part, the Mutual Releases clause therein, reads as follows:
Mutual Releases Mr. Coleman on behalf of himself and his heirs, successors and assigns and his controlled and/or affiliated companies, corporations and partnerships, including Buyer, does hereby release, acquit and forever discharge Sellers and their employees of and from any and all causes of action, claims, debts, demands, obligations, liabilities, benefits or costs, of whatever Mnd or character, known or unknown, in the past and up to the date of this agreement, that Mr. Coleman or any of them had asserted or may have asserted, against Sellers or their employees or any of them (the “Discharged Claims of Mr. Coleman”).... The releases set forth herein may be pleaded as a complete defense, and shall operate as a bar to any suit or proceeding brought by any of the parties relative to any of the Discharged Claims of Mr. Coleman and/or to any of the Discharged Claims of Settlers.
Similar language mutually released Coleman. We find this provision to be without ambiguity. The mutual releases from “any and all causes of actions, claims, debts, demands, obligations, liabilities, benefits or costs, of whatever kind or character, known or unknown, in the past and up to the date of this agreement,” |fiwithin common usage, explicitly leaves nothing for misinterpretation or further clarification and is broad enough to include a relinquishment of Coleman’s right to assert any claim for restrictive covenants. La. C.C. art.2047; See Brown v. Simoneaux, 593 So.2d 939 (La.App. 4th Cir.1992). This conclusion is further buttressed by the inclusion of a separate, but similar, Release of Guarantors clause in the sale agreement. La. C.C. art.2050. Dealing specifically with financing of the apartment venture, Coleman provided a “full and complete release of all personal liabilities, direct and contingent, as Guarantors” and the “full and complete release of all personal liabilities, direct or contingent of Sellers related to the Financing.” The separation of these clauses alone suggests an intent to address different issues therein. Moreover, the use of very specific language in the guarantor release shows an understanding by these astute businessmen of the importance of clarity in contract provisions.[3] Certainly then, had they intended the mutual releases to include only issues related to the Willows, they would have so specified. Additionally, had the parties intended the mutual releases to apply only to Willows-related claims, there would have been no reason to utilize a repetitive release for the apartment complex guarantors when the all-encompassing language in the Mutual Releases Clause would have been more than adequate to do so.
Of course, an individual who signs a written agreement is charged with the responsibility of having read it and is presumed to know and understand its contents. Tweedel v. Brasseaux, 433 So.2d 133 (La.1983); See also Tooke v. Houston Fire and Casualty Ins., 122 So.2d 109 (La.App. 2d Cir.1960); Shepherd v. All *217 state Ins., 562 So.2d 1099 (La.App. 4th Cir.1990). This is especially true in cases where the parties are intelligent, literate, erudite in business | ^transactions, and have been assisted by counsel. See Brown, supra. There exists no dispute that Coleman is an intelligent and experienced businessman who hired counsel to assist him in negotiating the sale agreement. There is likewise no question that he was able to read and understand the release. He is therefore bound by its clear meaning. Despite Coleman’s claim that he failed to understand the scope of the attending consequences, no further interpretation may be made in search of the parties’ intentions where, as here, the explicit language of the agreement leads to no absurd consequences. La. C.C. art.2046. Moreover, because under these circumstances parol evidence is inadmissable for proof of intent, we find no error in the trial court exclusion of Coleman’s testimony regarding his understanding of the extent of the release or any claimed error arising from that claimed intent.[4]
In light of this determination, it is unnecessary that we address the extent of the arbitration award or the application of res judicata to it.

Conclusion

Based upon the foregoing, we affirm the trial court’s denial of Coleman’s exception of prematurity and the granting of a declaratory judgment in favor of Charlton Lyons, Jr., et al, barring Coleman from asserting any further claims for restrictive covenants. Costs of this appeal are assessed against Coleman.
AFFIRMED.

. CWI participated in the sale as the transferee of Fant Parkway Development Co.

. Disputes as to the valuation of the partnership and equalization of capital accounts were resolved by this court in Charlton Lyons, Jr. et al. v. U.L. Coleman, 30,567 (La.App.2d Cir.06/24/98), 714 So.2d 872.

. The trial judge specifically found that the parties "... are not only very astute and experienced businessmen but they know, or certainly should know, that by signing a very broad release without reserving rights (such as to a right or rights to demand restrictive covenants) they lost those rights.”

. Notably, both the judgments denying Coleman’s exception of prematurity and granting plaintiff’s declaratory judgment show that the court considered the testimony of Coleman and Lyons and accepted Lyons' version of the facts, i.e., that the mutual releases settled all claims between the parties, including the issue of restrictive covenants. Therefore, even if we considered parole evidence in this matter we would find no error in this choice between two permissible views of the evidence. Rosell v. ESCO, 549 So.2d 840 (La.1989).